(C.D. 3233)

J. T. Steeb & Co., Inc. v. United States

United States Customs Court, Second Division

(Decided December 20, 1967)

*Glad & Tuttle* (*George R. Tuttle* and *Robert Glenn White* of counsel) for the plaintiff.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Bernard J. Babb* and *Brian S. Goldstein*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: In this case, imported merchandise invoiced as "Cotton Candle Wick" was classified under item 348.05 of the Tariff Schedules of the United States as braids, not suitable for making or ornamenting headwear, other, at the rate of 42.5 per centum ad valorem. It is the plaintiff's claim that the merchandise which is concededly in chief value of vegetable fibers is properly dutiable at the rate of 15 per centum ad valorem, as wicking, under item 347.25 of the said tariff schedules.

The tariff provisions pertinent to this case appear as follows:

Braids not suitable for making or ornamenting headwear:

\* \* \* \* \* \* \*

[Item 348.05]       Other_____ 42.5% ad val.

Narrow fabrics:
Of vegetable fibers:

\* \* \* \* \* \* \*

[Item 347.25]       Wicking _____ 15% ad val.

Schedule 3 headnotes:

2. For the purposes of the tariff schedules—

\* \* \* \* \* \* \*

(f) the term "braids," as used in connection with textile materials or textile articles, includes all braids in the piece, whether of flat, tubular, or other construction, with or without cores, and whether braided from fibers, filaments (including tinsel wire and lame), yarns, cordage, textile fabrics, or any combination thereof;

Schedule 3, part 4, subpart A, headnotes:

2. For the purposes of the tariff schedules—
(a) the term "narrow fabrics" means

   (i) woven or knit fabrics, not over 12 inches in width, with fast edges (that is, with both edges made or treated to prevent the fabric from unraveling, by means of selvages, stitching, gumming, fusing, or simple hemming); or

   (ii) seamless woven or knit tubings which, when flattened, are not over 12 inches in width; or

\* \* \* \* \* \* \*

Testifying as the only witness in this case was Mrs. Madge Peterson, purchasing agent of Northwest Candles, Inc., a candle manufacturer and the ultimate consignee of the merchandise at bar. She stated that she has been associated with the aforesaid organization for 7 years and has had experience in all parts of the factory, as the result of which she has become familiar with the merchandise in issue. She produced a sample of the imported material which was received in evidence as plaintiff's illustrative exhibit 1. It is a fabric, white in color, having the appearance of ordinary string, which is wound around a spool 6 inches high.

The witness testified that this material is used in her factory as wicking for the making of candles, and that she knew of no other use for it. She had attempted to crochet with it at one time, but did not find it suitable for that purpose.

On cross-examination, she gave the following testimony with respect to the construction of the merchandise:

By Mr. Babb:

Q. Mrs. Peterson, I ask you to look at Plaintiff's Illustrative Exhibit 1, and ask you whether that has been braided, if you know.—A. Well, it is a braid, in my knowledge.

Q. Has it been braided?—A. It is called woven wick. Now I don't know.

Q. Has it been braided, can you tell—can you tell from looking at it whether or not it has been braided?—A. No.

Q. Do you know?—A. It is woven.

Q. You never saw it made?—A. No.

Although it would appear that plaintiff's evidence falls short of establishing that the merchandise at bar consists of a product which is in fact wicking, that question seems not to have been raised in the instant case. As the issues have been framed, the matter in dispute is whether the imported wicking is provided for in item 347.25 as wicking, or by reason of its method of construction is excluded from that provision.

It is the contention of plaintiff that the record adequately established that the merchandise at bar is candlewicking and as such is specifically provided for in said item 347.25. Plaintiff argues that, although the imported merchandise appears to be braided, it is, nevertheless, known as "woven wicking" as defined in headnote 2(a) of subpart A of part 4 of schedule 3. Plaintiff further urges that not only was it the intent of Congress to include all wicking in item 347.25, whether or not braided, but that Congress did not intend merchandise such as that at bar to be included in item 348.05.

It is the contention of the defendant, however, that the finding implicit in the presumptively correct classification of the merchandise at bar under item 348.05 that it is braided has not been overcome; that, moreover, by design and construction, the merchandise meets the definition of braid, as that term is commonly understood, and that since it is braided, and not woven or knit, it is excluded from the provision for wicking by virtue of the definition of "narrow fabrics" quoted, *supra*, which restricts the category under which wicking is provided for to woven or knit fabrics.

Indeed it does not seem to be seriously disputed that the imported merchandise is in fact braided within the common understanding of that term nor could such a contention be successfully sustained.

It is by now well established that the common meaning of a tariff term is a question of law to be determined by the court. *United States v. Mercantil Distribuidora, S.A., Joseph H. Brown*, 43 CCPA 111, C.A.D. 617. In making that determination, the courts have often employed information obtained from lexicons and other standard authorities. *United States v. O. Brager-Larsen*, 36 CCPA 1, C.A.D. 388.

As defined in Webster's Third New International Dictionary, 1966, the verb "braid" means:

to form (three or more strands) into a cord or ribbon by repeatedly crossing a left and then a right strand over a central strand and under an opposite strand. * * *

The noun "braid" is defined in American Fabrics Encyclopedia of Textiles, 1960, page 593, as:

a narrow textile band or tape formed by plaiting together or crossing diagonally and lengthwise several threads of any of the major textile fibers to obtain a certain width, effect, pattern, or style. Used for binding coat edges and for decoration in military uniforms.

Examination of the sample in evidence in this case reveals that it is composed of three diagonally intertwined strands, each strand passed over and under the other. In this respect, it differs from weaving and knitting, manufacturing processes which involve respectively "an interlacing of threads or yarns at right angles," *D.N. & E. Walter & Co. et al. v. United States*, 43 CCPA 100, C.A.D. 615, or "an interlacing or latching of a single yarn or thread in a series of connected loops by means of hooked needles operated either by hand or by machinery, as for example, in the knitting of stockings," *United States v. Ameris Trading Co.*, 41 CCPA 151, C.A.D. 542. See also Webster's Third New International Dictionary, *supra*.

It remains to be determined whether in connection with the competing designations here involved Congress intended to provide, *eo nomine*, and without limitation for all manner of wicking, however fashioned, or whether, in view of the general statutory arrangement and

the particular placement of the provision for wicking, a more restricted meaning was intended. In the final analysis, it is the intent of Congress which must govern in the interpretation of a statute. *United States, etc.* v. *Simon Saw & Steel Co.*, 51 CCPA 33, C.A.D. 834; *United States* v. *S. H. Kress & Co.*, 46 CCPA 135, C.A.D. 716; *Sandoz Chemical Works, Inc.* v. *United States*, 43 CCPA 152, C.A.D. 623.

An examination of the comparative positions of these two provisions in the framework of the tariff schedules reveals that the provision for braids is of equal stature and location with a provision for narrow fabrics, but that the enumeration of "wicking" is an indented subdivision of the category of narrow fabrics.

Rule 10 of the General Headnotes and Rules of Interpretation of TSUS provides as follows:

General Interpretive Rules.   For the purposes of these schedules—

(a)   the general, schedule, part, and subpart headnotes, and the provisions describing the classes of imported articles and specifying the rates of duty or other import restrictions to be imposed thereon are subject to the rules of interpretation set forth herein and to such other rules of statutory interpretation, not inconsistent therewith, as have been or may be developed under administrative or judicial rulings;

\*          \*          \*          \*          \*          \*          \*

(c)   an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following consideration shall govern:

(i)   a superior heading cannot be enlarged by inferior headings indented under it but can be limited thereby;

(ii)   comparisons are to be made only between provisions of coordinate or equal status, i.e., between the primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading;

In harmony with these instructions, the provision for wicking must be considered an inferior designation circumscribed by the scope of the superior heading to which it is subordinate, namely, narrow fabrics. Narrow fabrics as indicated, *supra*, are, by specific statutory definition, restricted to those fabrics which have been woven or knit, and do not embrace braided fabrics. Moreover in determining whether the merchandise at bar falls within item 348.05 as other braids or item 347.25 as wicking, the relative specificity of their superior captions must be determined. On this score, it needs no great elaboration to conclude that "braids" is a more specific enumeration than "narrow fabrics".

By reason of the foregoing, it seems clear that the merchandise at issue is properly provided for as classified, and that the claim of the plaintiff is lacking in merit.

It is contended, nevertheless, that, by reason of previous tariff treatment, wicking used for the making of candles, whether or not braided, has always been classified as wicking rather than braids, and that Congress intended to perpetuate this classification in the tariff schedules. We do not think, however, that the particular scheme or arrangement adopted by Congress in the enumeration of "wicking" lends itself to this conclusion nor do we regard as tenable, in the absence of proof of commercial designation, that the subject merchandise is known as "woven wicking". *Nylos Trading Company* v. *United States*, 37 CCPA 71, C.A.D. 422.

The claim of the plaintiff is, therefore, overruled.

Judgment will be entered accordingly.